United States Court of Appeals,

Fifth Circuit.

No. 97-10011.

Rebecca SHERROD, Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC., Defendant-Appellee.

Jan. 27, 1998.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, and BENAVIDES and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

In this employment discrimination case which originated in state court, the plaintiff-appellant, Rebecca Sherrod, filed suit against the defendant-appellee, American Airlines, Inc., under the Texas Worker's Compensation Act, Texas Labor Code Ann. § 451.001 *et seq.* (Vernon 1996); the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code Ann. § 21.001 *et seq.* (Vernon 1996); and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* After removal to the United States District Court for the Northern District of Texas on the basis of federal question jurisdiction, the plaintiff added claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* The plaintiff appeals the order of the district court granting summary judgment for the defendant on all plaintiff's claims. We affirm in part and reverse in part.

I.

1

Plaintiff, Rebecca Sherrod, worked as a flight attendant for Defendant, American Airlines, Inc., from 1968 to 1988. In November 1985, Sherrod received an on-the-job injury to her neck which required surgery. Sherrod returned to work in 1986, but re-injured her neck in December 1987 while working as a flight attendant. The second injury required surgery to correct the cervical fusion attempted in the first surgery. American Airlines placed Sherrod on sick leave for a term of five years pursuant to the Collective Bargaining Agreement ("CBA") entered into by American and the Association of Professional Flight Attendants. Sherrod, however, never returned to work.

In December 1990, Sherrod sought reinstatement as a flight attendant. Dr. Norman McCall, a member of American's medical department, recommended that Sherrod not return to flight status. Dr. McCall based his recommendation on an examination conducted by Dr. Tom Mayer which found that Sherrod could only lift 45 pounds occasionally, and 25 pounds frequently. Consequently, American medically disqualified Sherrod from returning to a flight attendant position. Sherrod's personal physician, Dr. Phillip Williams, concurred with Dr. Mayer's lifting limitation. Once Sherrod's personal physician concurred with American's medical staff, the CBA permitted Sherrod's removal from the list of active flight attendants.

Sherrod filed a grievance against American for medically disqualifying her from flight service. In arbitration, the arbitrator found that American did not violate the CBA. Under the

2

CBA, American could not terminate Sherrod until five years of sick leave had elapsed without her return to flight duty.

Beginning in 1993, the Personnel Department at American assisted Sherrod in looking for another position within American. Sherrod interviewed for one position but was turned down. In March 1994, American offered Sherrod an interview for the same position, but Sherrod declined the interview and informed April Mott in the Personnel Department that she had filed an EEOC complaint in an effort to regain her position as flight attendant. In May 1994, American terminated Sherrod citing the expiration of her five years of sick leave and her refusal to interview. The letter of termination which American sent to Sherrod referred to the March conversation between Sherrod and Mott. In February 1996, Sherrod applied for another position with American but learned that she was ineligible for rehire for any position.

In August 1994, Sherrod filed suit against American in the District Court of Dallas County claiming violations of the Texas Worker's Compensation Act § 451.001, the Texas Commission on Human Rights Act ("TCHRA") and the ADEA. American removed the action to the U.S. District Court for the Northern District of Texas (Civil Action No. 3:94-CV-2044-D). The case was assigned to Judge Fitzwater's court.

Sherrod filed a second lawsuit in October 1994 in the U.S. District Court for the Northern District of Texas (Civil Action No. 3:94-CV-2250-R), alleging violations of the ADA. Sherrod incorrectly filed under the second civil action number an Objection

to Removal, Motion to Remand, and Brief in Support (together hereinafter referred to as "Motion to Remand"). On November 1, 1994, Judge Fish, in whose court the second civil action was filed, ordered the Motion to Remand "unfiled" because it had been filed in the wrong court. Sherrod did not refile the Motion to Remand under the correct docket number. On November 28, 1994, Judge Fitzwater consolidated the two pending cases under Civil Action Number 3:94-CV-2044-D. In January 1995, Judge Fitzwater denied Sherrod's Motion to Remand without reference to the fact that the Motion to Remand had been "unfiled" by the previous court.

In November 1995, Sherrod filed a third lawsuit in federal court (Civil Action No. 3:95-CV-2769-R) alleging unlawful retaliation under the ADA and ADEA. 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 12203(a)(ADA). These claims were consolidated with the first lawsuit. In May 1996, the District Court granted American's motion for summary judgment on Sherrod's ADEA, TCHRA, and Texas Labor Code § 451.001 claims. In December 1996, the District Court granted summary judgment for American on Sherrod's remaining claims.

## II.

The plaintiff argues that the district court erred by overruling her Motion to Remand in violation of federal law prohibiting the removal of state worker's compensation claims. In reviewing a district court's denial of a plaintiff's motion to remand a case from federal court to state court, the Court of Appeals applies a de novo standard of review. *Allen v. R & H Oil*

4

*& Gas Co.,* 63 F.3d 1326, 1336 (5th Cir.1995). Before deciding whether the court's denial of the motion to remand was appropriate, however, we must first decide whether Sherrod waived her right to move for remand.

A motion to remand a case on the basis of any defect, other than lack of subject matter jurisdiction, must be made within thirty days after notice of removal or the plaintiff loses the opportunity to move for remand. 28 U.S.C. § 1447(c). Thus, if the plaintiff objects to removal due to some procedural defect, then a motion to remand must be made within thirty days. *See id. See also Williams v. AC Spark Plugs Division of General Motors Corp.,* 985 F.2d 783, 786 (5th Cir.1993) (discussing waiver of the right to move for remand under § 1447(c)). Additionally, 28 U.S.C. § 1445(c) precludes the removal of an action to federal court which arises under the worker's compensation laws of any state. *See* 28 U.S.C. § 1445(c). Therefore, a waiver of the right to move for a remand of a state worker's compensation claim depends on whether the removal of such a claim causes a procedural or jurisdictional defect. *See Williams,* 985 F.2d at 786. In *Williams,* the court held that the wrongful removal of a state worker's compensation claim is a procedural defect. *Id.* Consequently, a plaintiff must make a motion to remand based on the wrongful removal of a state worker's compensation claim within thirty days after notice of removal or the plaintiff waives the opportunity to move for remand. *Id.*

American claims that Sherrod waived her objection to removal

because the Motion to Remand was filed in the wrong court, ordered "unfiled" by Judge Fish, and not refiled by Sherrod within thirty days after notice of removal. Thus, American claims that Sherrod's Motion to Remand was not properly before the district court after the two cases were consolidated in Judge Fitzwater's court. Sherrod did not fail to make the motion to remand within 30 days. On the contrary, Sherrod made the motion, but made it under the wrong docket number. When the claims were later consolidated, all motions filed in the second lawsuit were deemed filed in the consolidated suit. American filed a response in opposition to the Motion to Remand in the proper court even though the motion had been incorrectly filed in Judge Fish's court where the second lawsuit was pending. Although Sherrod had filed the Motion to Remand in the wrong court, the district court ruled on the motion after consolidation as if the motion had been filed in the proper court.

The district court has power under Federal Rule of Civil Procedure 60(a) to correct clerical mistakes in judgments, orders, or other parts of the record at any time on its own initiative. *See* Fed.R.Civ.P. 60(a). Although the scope of Rule 60(a) is very limited, Rule 60(a) may be used to correct "mindless mechanistic mistakes" which require no additional legal reasoning. *In re West Texas Marketing Corp.,* 12 F.3d 497, 504 (5th Cir.1994). The relevant test for the application of Rule 60(a) is "whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a

6

copying or computational mistake, which is correctable under the Rule." *Id.*

Although Sherrod filed the Motion to Remand under the incorrect docket number, the district court corrected the error by treating the motion as if it were filed under the proper docket number. American recognized the plaintiff's error and filed a response in opposition to the motion to remand in the appropriate court. Thus, treating the motion as if it were filed under the correct number would not affect any substantive rights of the parties because both parties had the opportunity to address the issue of remand. Consequently, Sherrod did not waive her right to move for remand and such motion was properly before the court.

Because Sherrod did not waive her right to remand, the court must next determine whether the district court applied the correct standard when deciding whether to remand Sherrod's § 451.001 claim. Under 28 U.S.C. § 1441, "except as otherwise expressly provided by Act of Congress," any civil action filed in state court may be removed to federal court when the district court would have original jurisdiction. 28 U.S.C. § 1441(a). Thus, civil actions filed in state court are generally removable to federal court unless an Act of Congress expressly prohibits removal. As previously stated, 28 U.S.C. § 1445(c) prohibits the removal of actions arising under the worker's compensation laws of a state.[1]

---

[1]18 U.S.C. § 1445(c), entitled "Nonremovable actions," provides:

> A civil action in any State court arising under the workmen's compensation laws of such State may not be

7

Sherrod's claim of retaliatory termination under § 451.001 is a claim arising under Texas worker's compensation laws. *See Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1092 (5th Cir.1991). The court has previously held that § 1445(c) requires an article 8037c claim to be remanded when the basis of removal is diversity jurisdiction.[2] *See id.* American, however, removed Sherrod's § 451.001 claim on the basis of federal question jurisdiction because Sherrod's § 451.001 claim was coupled with an ADEA claim. In this appeal, we are presented for the first time with the issue of whether § 1445(c) prohibits the removal of state worker's compensation claims when the basis of removal is federal question jurisdiction.

In deciding this issue, we find persuasive the court's reasoning in *Jones.* In *Jones,* the court declared that it would broadly interpret § 1445(c) in order to further Congressional intent toward maintaining state court jurisdiction over worker's compensation cases filed in state court. *See Jones,* 931 F.2d at 1092. Although the district court's jurisdiction in *Jones* was based on diversity, the court did not distinguish between diversity and federal question jurisdiction when construing § 1445(c).

American urges us to adopt the interpretation utilized by the district court in *Cedillo v. Valcar Enterprises & Darling Delaware Co., Inc.,* 773 F.Supp. 932 (N.D.Tex.1991), which distinguishes

---

removed to any district court of the United States.

[2]Tex.Rev.Civ. Stat. art. 8037c was repealed and recodified under Tex. Labor Code § 451.001, effective September 1, 1993.

8

between diversity and federal question jurisdiction. In *Cedillo,* the district court held that it had subject matter jurisdiction over the plaintiff's § 451.001 claim through its exercise of supplemental jurisdiction because the state worker's compensation claim was pendant to a federal question. Thus, the *Cedillo* court drew a distinction between diversity and federal question jurisdiction by concluding that § 1445(c) did not prohibit removal of a state worker's compensation claim when joined with a pendant federal claim.

Sherrod, on the other hand, urges us to adopt *Humphrey v. Sequentia, Inc.,* 58 F.3d 1238 (8th Cir.1995). In *Humphrey,* the Eighth Circuit stated that § 1445(c) prohibits removal of state worker's compensation claims regardless of whether the district court's original jurisdiction is based on diversity or federal question jurisdiction. *Humphrey,* 58 F.3d at 1245. American argues that the Eighth Circuit did not rely on any authority when it established this premise. In support of the Eighth Circuit's proposition, the statutory language draws no distinction between diversity and federal question jurisdiction. A plain reading of the statute lends credence to the proposition that § 1445(c) prohibits the removal of any state worker's compensation claims. Consequently, we hold that § 1445(c) prohibits removal of state worker's compensation claims regardless of whether jurisdiction is based on diversity or federal question.[3]

---

[3]In *Kay v. Home Indemnity Co.,* the court noted its reluctance "to strain to find a way to entertain workmen's compensation suits." 337 F.2d 898, 901 (5th Cir.1964).

9

In denying Sherrod's Motion to Remand, the district court concluded that § 1445(c) does not prevent a district court from exercising supplemental jurisdiction over state worker's compensation claims when joined with a federal question. Because the language of § 1445(c) is clear and the court's decision in *Jones* does not distinguish between removal based on diversity and federal question jurisdiction, the district court erred by failing to sever and remand the state worker's compensation claims. Thus, we reverse the district court's order denying Sherrod's Motion to Remand.[4]

### III.

Sherrod argues that the district court erred by granting summary judgment for American on plaintiff's ADA claim.[5] In employment discrimination cases, the court reviews summary judgments de novo, applying the same standard as the district court. *See Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989). In order to make a prima facie case of

---

[4]After reversing the order of the district court denying the plaintiff's motion to remand, the issue of whether the district court erred by granting American's motion for summary judgment regarding the causal connection between the worker's compensation claim and Sherrod's termination becomes moot.

[5]The court need not address whether the plaintiff raised a genuine issue of material fact regarding her claims for discrimination under the ADEA and TCHRA. Sherrod waived review of these issues by not briefing them in the Argument of her brief. *See Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 183 n. 5 (5th Cir.1996); *Harris v. Plastics Mfg. Co.,* 617 F.2d 438, 440 (5th Cir.1980). *See also* Fed. R.App. P. 28 (stating the requirement that the appellant's brief include an argument for each issue). Thus, we affirm the order of the district court granting summary judgment for American on the plaintiff's ADEA and TCHRA claims without reviewing the merits of the claims.

discrimination under the ADA, a plaintiff must establish that she is a qualified individual with a disability and that the negative employment action occurred because of the disability. *See* 42 U.S.C. § 12112(a). Therefore, the plaintiff must first establish that she has a disability. *See Bridges v. City of Bossier,* 92 F.3d 329, 332 (5th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 770, 136 L.Ed.2d 715 (1997). The term "disability" encompasses the following: (1) a mental or physical impairment that substantially limits one or more major life activities of an individual, (2) a record of such an impairment, or (3) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).

First, Sherrod has failed to produce evidence establishing a genuine issue as to whether she has a physical impairment that substantially limits a major life activity. *See* 42 U.S.C. § 12102(2)(A). Under the regulations promulgated by the Equal Employment Opportunity Commission, the term "substantially limits" means:

> (i) unable to perform a major life activity that the average person in the general population can perform; or

> (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Additionally, a "major life activity" consists of such tasks as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). Whether an impairment substantially limits a major life activity depends on the following

11

factors: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or expected long term impact. *See* 29 C.F.R. § 1630.2(j)(2). In addition to the factors listed in § 1630.2(j)(2), a court may also look at the following factors when determining whether an individual is substantially limited in the major life activity of working:

> (A) The geographical area to which the individual has reasonable access;

> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

Sherrod attempts to establish that her back injury caused a substantial limitation in the major life activities of lifting and working. To determine whether an individual is substantially limited in a major life activity other than working, the court looks to whether that person can perform the normal activities of daily living. *See Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir.1996)(citing *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995)). In attempting to prove a substantial limitation on lifting, Sherrod produced medical evidence that she is restricted to lifting forty-five pounds occasionally and twenty

12

pounds frequently. Sherrod's evidence, however, tends to prove only that she is limited from *heavy* lifting, not the routine duties of daily living. Although the evidence propounded by Sherrod tends to confirm a restriction on heavy lifting, such evidence alone is insufficient for a reasonable jury to find a substantial limitation on a major life activity. *See Ray v. Glidden Co.,* 85 F.3d 227, (5th Cir.1996); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995).

Sherrod attempts to establish a substantial limitation on the major life activity of working through evidence of her heavy lifting restriction. In order to establish a substantial limitation on working, the claimant must demonstrate a significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes. *See Dutcher,* 53 F.3d at 727 (citing 29 C.F.R. § 1630.2(j)(3)(i)). Evidence of disqualification from a single position or narrow range of jobs will not support a finding that an individual is substantially limited from the major life activity of working. *See Dutcher,* 53 F.3d at 727. *See also Chandler v. City of Dallas,* 2 F.3d 1385, 1392 (5th Cir.1993)("An impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one.").

Much of the evidence adduced by Sherrod pertains to the nature and duration of her injury. Based on medical restrictions on heavy lifting, the plaintiff broadly asserts that she cannot perform any job requiring even medium lifting. Sherrod fails to bolster her

13

claims of disqualification from a broad range of jobs by presenting evidence of the number and types of jobs from which she is disqualified, or evidence that her training and skills limit her to jobs requiring heavy lifting. *See* 29 C.F.R. § 1630.2(j)(3)(ii). Although a plaintiff need not submit evidence of each factor listed in 29 C.F.R. § 1630.2(j)(3)(ii), the evidence presented by Sherrod regarding the nature and severity of her injury fails to establish her disqualification from a broad range or class of jobs. The evidence produced by Sherrod only tends to prove disqualification from one job, that of flight attendant. Thus, Sherrod has failed to adduce evidence sufficient for a reasonable jury to find a substantial limitation on the major life activity of working.

Second, Sherrod has also failed to produce evidence that she has a record of impairment. *See* 42 U.S.C. § 12102(2)(B). Although the ADA does not define "record of impairment," the regulations provide: "Has a record of such impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more of the major life activities." 29 C.F.R. § 1630.2(k) (1996). Therefore, in order to make out a claim for discrimination based on a record of impairment, the plaintiff must show that at some point in the past, she was classified or misclassified as having a mental or physical impairment that substantially limits a major life activity. *See Burch v. Coca-Cola Co.,* 119 F.3d 305, 321 (5th Cir.1997). Sherrod points to her prior back surgery and disability leave of absence as evidence of a record of impairment. Although Sherrod's evidence

14

tends to prove she has a record of impairment, the evidence fails to show that the impairment substantially limits a major life activity. *See Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir.1996). Consequently, Sherrod has failed to raise a genuine issue regarding whether she has a record of impairment limiting a major life activity.

Third, Sherrod has failed to produce evidence that American regarded her as disabled. *See* 42 U.S.C. § 12102(2)(C). Under the regulations promulgated by the EEOC, the "regarded as" language means:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment;  or
>
> (3) Has none of the impairments defined in paragraphs (h)(1) or (2) of [§ 1630.2] but is treated by a covered entity as having a substantially limiting impairment.[6]

29 C.F.R. § 1630.2(*l* ).   *See Burch v. Coca-Cola Co.,* 119 F.3d 305, 322 (5th Cir.1997);  *Bridges v. City of Bossier,* 92 F.3d 329, 332 (5th Cir.1996).   In *Bridges,* the court held that in order for an

---

[6]The impairments listed in subsection (h) include:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:   neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine;  or
>
> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

15

employer to have regarded an impairment as substantially limiting in the activity of working, the employer must regard an individual as significantly restricted in the ability to perform a class or broad range of jobs. *Bridges,* 92 F.3d at 332. Sherrod attempts to prove that she was regarded as disabled by American through its refusal to approve her for flight duty due to the fear of re-injury. There is undisputed evidence which shows that American attempted to place Sherrod in other positions for which American did not deem her disqualified due to her back condition. Such evidence could only permit a reasonable jury to conclude that American believed Sherrod to be qualified for other positions. Thus, we hold that American did not regard Sherrod as disabled.

Because Sherrod did not produce evidence establishing a genuine issue regarding her status as a qualified individual with a disability, we affirm the district court's grant of summary judgment on the ADA claims.

IV.

Finally, Sherrod asserts that the district court erred by granting summary judgment for American on her claims of unlawful retaliation under the ADA and ADEA. *See* 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 12203(a)(ADA). In employment discrimination cases, the court reviews summary judgments de novo, applying the same standard as the district court. *See Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989).

As a threshold issue, the plaintiff argues that the district court erred by applying the burden shifting analysis of *McDonnell*

16

*Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Sherrod contends that *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), provides the appropriate burden-shifting framework for unlawful retaliation claims under the ADA and ADEA.[7] *Mt. Healthy,* however, applies only to retaliation claims founded upon violations of constitutional rights. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)(free speech); *North Mississippi Communications, Inc. v. Jones,* 874 F.2d 1064, 1068 (5th Cir.1989)(free speech). Therefore, the district court did not err by holding that *McDonnell Douglas* provides the appropriate burden-shifting analysis for claims of unlawful retaliation under the ADA or ADEA. *See Grizzle v. Travelers Health Network, Inc.,* 14 F.3d 261, 267 (5th Cir.1994) (applying *McDonnell Douglas* to an ADEA claim); *cf. Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir.1996) (applying *McDonnell Douglas* to Title VII unlawful retaliation cases).

Under *McDonnell Douglas,* if the plaintiff can establish a prima facie case of retaliation, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for

---

[7]Sherrod attempts to recharacterize the factual background of this case as a "mixed motives" discharge. *See, e.g., Carter v. South Central Bell Tel. Co.,* 912 F.2d 832, 843 (5th Cir.1990)(explaining the burden of proof in a mixed motives discharge). Sherrod never established, nor did American concede that an illegal motive played a part in Sherrod's discharge. Thus, the mixed motives analysis does not apply.

the adverse employment action.[8] *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Grizzle,* 14 F.3d at 267. If the defendant advances a legitimate reason for the adverse employment action, then the plaintiff must adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Grizzle,* 14 F.3d at 267. Therefore, the ultimate issue is whether the employer unlawfully retaliated against the employee for exercising protected activity. The ultimate issue of retaliation requires the employee to prove that the adverse employment action would not have occurred "but-for" the protected activity. *See Long v. Eastfield College,* 88 F.3d 300, 308 (5th Cir.1996). The plaintiff must reveal a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment. *See Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 993 (5th Cir.1996)(en banc). Evidence is substantial if it is of "such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions." *Id.* (citing *Boeing Co. v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969)(en banc)).

Sherrod has made a prima facie case of retaliation. First,

---

[8]A plaintiff establishes a prima facie case of unlawful retaliation by proving (1) that she engaged in protected activity, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *Long,* 88 F.3d at 305 n. 4. The burden of establishing the "causal link" in the prima facie case is much less onerous than the burden of proving "but-for" causation required for the determination of the ultimate issue of retaliation. *Id.*

18

Sherrod engaged in protected activity by filing EEOC complaints against American based on the reasonable belief that American's actions violated the ADA and ADEA. Second, American took adverse action against Sherrod by terminating her employment and listing her as ineligible for rehire. And third, Sherrod established a causal link between the EEOC complaints and her subsequent termination.

In order to establish the causal link between the protected conduct and the illegal employment action as required by the prima facie case, the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity. A causal link can be established by evidence that the ultimate decision maker, with final authority to hire and fire subordinate employees, merely "rubber stamped" a recommendation to terminate made by an employee with knowledge of the complaint. *See Long,* 88 F.3d at 307. The causal link, however, can be severed if there is evidence that the ultimate decision maker did not merely "rubber stamp" the recommendation of the employee with knowledge of the protected activity, but conducted an independent investigation into the circumstances surrounding the employee's termination. *See id.*

Sherrod has introduced evidence that the ultimate decision maker, Patrick Walsh, signed the termination letter written by Scott Dennett in which references were made to Sherrod's conversation with April Mott regarding the EEOC complaints. There is no evidence that Walsh conducted an independent investigation

19

into the circumstances surrounding Sherrod's termination. Such an independent investigation would have severed the causal link between Dennett's knowledge of the EEOC complaint and Sherrod's termination. Thus, Sherrod has introduced evidence allowing a reasonable trier of fact to find a causal link between the EEOC complaint and the termination.

Because Sherrod made a prima facie case of retaliation, the burden then shifted to American to give a legitimate, nondiscriminatory explanation for the action it took against Sherrod. American satisfied this burden by asserting that the negative employment action was based on Sherrod's refusal to interview for positions and that Sherrod's five years of sick leave had expired.

The burden then shifted back to Sherrod to show that the adverse employment action would not have occurred "but for" her EEOC claims. Sherrod failed to meet this burden. Although Sherrod produced unsubstantiated evidence that American does not have a policy of terminating employees for declining interviews or listing former employees as ineligible for rehire, this evidence is not sufficient to overcome American's legitimate, nondiscriminatory explanation for the action it took against Sherrod. American refuted any hint of retaliation by producing evidence that Sherrod declined to interview for any position other than flight attendant, for which she had already received five years of disability pay due to medical inability to perform the duties. Viewing the summary judgment evidence in the light most favorable to Sherrod, a

20

"reasonable and fair minded person" would conclude that the explanation proffered by American was not a pretext for unlawful retaliation. Thus, Sherrod has failed to establish that she would not have been terminated but for the previous EEOC complaints. *See Long,* 88 F.3d at 308. Consequently, a genuine issue of fact does not exist as to whether American unlawfully retaliated against Sherrod. We affirm the order of the district court granting summary judgment in favor of the defendant on the plaintiff's federal retaliation claims.

V.

Based on the foregoing, the district court erred by denying the plaintiff's motion to remand because 28 U.S.C. § 1445(c) precludes removal of claims arising under the worker's compensation laws of any state; the district court did not err by granting summary judgment for defendant on plaintiff's claims of discrimination under the ADA, ADEA, and TCHRA; and the plaintiff failed to raise a genuine issue of material fact regarding unlawful retaliation under the ADA and ADEA. Consequently, the order of the district court is AFFIRMED insofar as it grants summary judgment for the defendant on plaintiff's ADA and ADEA discrimination claims, REVERSED with further instructions for the district court to remand to state court the state worker's compensation claims filed under Texas Labor Code § 451.001, and AFFIRMED insofar as the order grants summary judgment for the defendant on the plaintiff's federal retaliation claims.

21