EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

TCIM SERVICES, INC., Defendant.

No. 6:00CV590.

United States District Court,
E.D. Texas,
Tyler Division.

Dec. 27, 2001.

William C. Backhaus, Suzanne Elizabeth Michel, Ronetta J. Francis, Equal Employment Opportunity Commission, Dallas, TX, for Plaintiff.

Gary B. Eidelman, Saul Ewing, LLP, Baltimore, MD, for Defendant.

### ORDER ON SUMMARY JUDGMENT

STEGER, District Judge.

On this day came for consideration the *Defendant, TCIM Services, Inc.'s, Motion for Summary Judgement* (Docket No. 21). After careful consideration, the Court is of the opinion that the following order should issue.

#### BACKGROUND AND PROCEDURAL HISTORY

This is an employment discrimination lawsuit brought by the Plaintiff, Equal

Employment Opportunity Commission ("EEOC"), on behalf of Sharon Boyd ("Boyd"), against the Defendant TCIM Services, Inc. ("TCIM") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–3, in which the EEOC alleges retaliation, and seeks injunctive and monetary relief. EEOC contends that TCIM retaliated against Boyd, a white female, by terminating her employment because she refused to comply with an alleged directive by Pamela Diane Thacker ("Thacker"), her branch manager, not to hire too many African–Americans.

TCIM is a telemarketing company providing marketing support to private industry and government. Out-bound sales and marketing are examples of services provided by TCIM. The associates working the telephones at an out-bound center are referred to as Telephone Sales Associates or TSA's. On or about October 13, 1998, TCIM began readying its new out-bound call center in Longview, Texas. Thacker, who began her employment with TCIM in November 1994, as a Branch Manager in Tulsa, Oklahoma, was chosen to manage the Longview branch. Several TCIM employees from other branches formed a small temporary start-up group to help the Longview branch launch successfully. Among this start-up group were Katie McGoy ("McGoy") and Delia Glover ("Glover"), both Black female TCIM recruiters who worked for Thacker in Tulsa. Thacker specifically requested McGoy and Glover be a part of the start-up group, who were brought in to help set up recruiting, hire the initial group of associates and train the Recruiter. To fully staff the management/front office team in Longview, Thacker hired yet another Black female named Deardra Turner Woods ("Woods") as the Branch Office Administrator.

Thacker interviewed several candidates for the Recruiter position at the Longview branch, including Boyd. Boyd was interviewed a second time and hired on or about October 28, 1998, after the person originally hired to be the Recruiter was terminated due to unsatisfactory performance. For two days, McGoy and Glover worked to train Boyd to satisfactorily perform the duties of a Recruiter.

According to the evidence presented by the Defendant, Boyd was counseled and reprimanded on several occasions for conduct directly related to her performance as a Recruiter. After working as a Recruiter for less than three months, Thacker informed Boyd that she could not remain employed as a Recruiter. Thacker offered Boyd the opportunity to remain employed with TCIM by accepting a position as a TSA with no reduction in pay. As a TSA, Boyd would be eligible to earn commissions from sales along with her hourly pay. Boyd refused the offer and returned to work the following day. At that point, on or about January 27, 1999, Thacker terminated Boyd.

Boyd followed proper procedures by initially filing a complaint with the EEOC, and all prerequisites to the filing of suit have been met. EEOC filed suit on behalf of Boyd on October 3, 2000. Through the instant motion, the Defendant now claims that it is entitled to summary judgment because Boyd was terminated solely for legitimate, non-retaliatory business reasons arising from her failure to perform her duties and responsibilities as a Recruiter. Additionally, the Defendant claims that EEOC cannot sustain its burden to prove that "but for" the alleged protected activity, Boyd would not have been terminated.

## STANDARD OF REVIEW

A party is entitled to summary judgment on all or any part of a claim "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party must show initially that there is no genuine issue of any material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The movant may meet this burden by pointing out the absence of evidence supporting any essential element of the non-moving party's claim. *Celotex Corp. v. Catrett,* 477. U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In deciding whether to grant a motion for summary judgment, the Court "review[s] the evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 189 (5th Cir.1991) (citing *Duvall v. The Ritz Carlton Hotel Co.,* 946 F.2d 418, 420 (5th Cir.1991), and quoting Fed.R.Civ.P. 56(c)). An issue is "genuine" only if the evidence could lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513).

The opposing party may not rest on the mere allegations or denials of artful pleading, but must set forth affirmative facts that show a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. This requires that the non-moving party make a showing sufficient to establish the existence of any element essential to that party's case, and on which that party will bear the burden at trial. *Nowlin v. R.T.C.,* 33 F.3d 498, 501 (5th Cir. 1994) (citing *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53).

### The Plaintiff's Retaliatory Termination Claim

With respect to Title VII retaliatory termination cases, Courts apply the familiar *McDonnell–Douglas* burden-shifting rubric. *Rubinstein v. Administrators of the Tulane Educ. Fund,* 218 F.3d 392, 401–02 (5th Cir.2000). A plaintiff establishes a *prima facie* case of retaliation by proving:

(1) that she engaged in a protected activity;

(2) that an adverse employment action occurred; and

(3) that a causal link exists between the protected activity and the adverse action.

*Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122, n. 8 (5th Cir.1998).

If the plaintiff can establish a *prima facie* case of retaliation, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse decision. *Id.,* 132 F.3d at 1122. This burden is one of production only, and it does not involve credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Once the defendant satisfies this burden, the burden of production then shifts back to the plaintiff to produce evidence, which if true, would permit a reasonable trier of fact to find that defendant's proffered reasons are pretextual. *Martin v. Kroger Co.,* 65 F.Supp.2d 516, 559 (S.D.Tex.1999), aff'd, *Martin v. Kroger Co.,* 224 F.3d 765 (5th Cir.2000). To demonstrate a "pretext for discrimination," EEOC must show both (1) that TCIM's stated reasons are false and (2) that prohibited retaliation was the actual reason for termination. *Id.* Unlike disparate treatment cases, which require only that the prohibited factor be a sub-

stantial motive in the defendant's adverse action, the ultimate determination in a retaliation case is whether the adverse employment action would not have occurred "but for" the protected activity. *Id.,* 65 F.Supp.2d at 559; *Sherrod,* 132 F.3d at 1122. The plaintiff must reveal a conflict in substantial evidence on this ultimate issue to withstand summary judgment. *Id.* Evidence is "substantial" if it is of such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions. *Id.*

 It is a well established precept of law that an employee's own subjective belief of discrimination under Title VII, no matter how genuine, cannot serve as the basis for judicial relief. *See Price v. Marathon Cheese Corp.,* 119 F.3d 330, 337 (5th Cir.1997); *Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 153 (5th Cir.1995), *cert. denied,* 516 U.S. 1047, 116 S.Ct. 709, 133 L.Ed.2d 664 (1996). Thus, in order to withstand TCIM's Motion for Summary Judgment, the EEOC must do more than simply assert Boyd's belief that she was fired because Thacker wanted her to engage in unlawful activity. The agency must produce evidence to establish that there is a conflict of substantial evidence by which the trier of fact could find that she would not have been terminated but for her protected activity.

### Prima Facie Case of Retaliatory Termination

██ TCIM does not contest the first two elements of the Plaintiff's claim—that Boyd participated in a protected activity and that she was subject to an adverse employment decision. However, the Defendant does aver that the Plaintiff has failed to establish her *prima facie* case of retaliation by failing to establish a causal

connection between these two elements. The Court agrees.

The evidence presented by the Defendant shows that Thacker counseled Boyd on numerous occasions concerning (1) using inappropriate language when talking to applicants with words like "honey," "sweetie," or "babe"; (2) exercising proper restraint and not embroiling herself in disputes involving other associates; (3) remaining focused on her duties as the Recruiter as opposed to inquiring as to TSA's problems which were not within her scope of responsibilities; (4) conducting interviews in a professional manner by not interrupting the interview for personal telephone calls or being on the telephone when applicants arrived for their scheduled appointments; and (5) leaving an interview to go do something else. *See Deposition of McDonald,* pp. 134–36; *see also Deposition of Thacker,* p. 71. The counseling sessions occurred during Boyd's short three-month tenure as a Recruiter with TCIM.

Thacker ultimately was forced to remove Boyd from her position as Recruiter after Woods complained to Thacker about Boyd's unprofessional behavior during an interview, which occurred on or about January 26, 1999. This incident occurred just days after Boyd was given instruction, training and guidance on, among other things, proper interview techniques. *See Deposition of Thacker,* pp. 147–48; *see also Deposition of Woods,* p. 42, 92. Woods and Boyd shared an office, and as a result Woods was present during the interview. According to Boyd's own testimony, she was interviewing an applicant that had many children when Boyd asked her the following question: "Don't you know what birth control is?" *Deposition of Boyd,* pp. 174–75. Boyd's conduct during the aforementioned interview, as reported by Woods, was the final straw which con-

vinced Thacker that Boyd lacked the capability to handle the duties and responsibilities of the Recruiter.

Boyd was aware that TCIM Recruiters must at all times act and present themselves and the company in a professional manner. She further understood that TCIM was striving to convey a professional image. *See Deposition of Boyd,* p. 220. In an effort to instill this professionalism, Thacker counseled Boyd about her performance on more than one occasion, as mentioned above. Yet, Boyd failed to follow the counseling of Thacker.

Boyd's own actions following her termination further the Defendant's argument that no causal connection between the protected activity and the adverse employment decision exists. Boyd's actions constitute an admission that the prohibited activity had nothing to do with her termination. Immediately after Thacker terminated Boyd, she confronted Woods and began screaming and cursing at her. Boyd blamed Woods for her termination, believing that Woods' report to Thacker was the cause of her termination. *Id.,* p. 179; *see also Deposition of Woods,* pp. 92–3.

Boyd further validated Thacker's legitimate, non-discriminatory reasons for terminating Boyd when she called Thacker the day after her termination. On or about January 28, 1999, Boyd called Thacker to apologize and ask for her job back. During the conversation Boyd attempted to justify her irrational behavior the day before. The pertinent part of the conversation is as follows:

**Boyd:** You know, I didn't mean to buck up on you, you know, and I'm sure you've got a temper too and I didn't mean to upset you, for you to have an asthma attack or anything else like that. I just—I have gone through—if you just had any idea of what I've gone through

the past couple of weeks. I blew, okay? I just—I literally just blew my temper and which, you know, I shouldn't have.

**Thacker:** Uh-huh.

**Boyd:** And, I respect, you know, I respect you. I just didn't think I would get terminated.

**Thacker:** Uh-huh.

**Boyd:** And, you know, it hurt my feelings. And if I hadn't gotten so close to the people that I had gotten close maybe it wouldn't have even bothered me.

**Thacker:** Uh-huh.

**Boyd:** But it did. And I guess that's the reason I got so angry because I was in shock. And then I also thought, you know, maybe because I'm wearing a heart monitor you felt that I was high risk there.

Thacker: Not at all.

*Transcribed Tape Recording of Boyd/Thacker Telephone Call.* Later in the same conversation, Boyd apologized for her behavior and threats again:

**Boyd:** I mean, you have bad days too Diane. Okay? And I know you go through a lot as well. And I don't want to threaten anybody in what I said yesterday I truly apologize for.

**Thacker:** Well, I appreciate that.

**Boyd:** You know, and I didn't mean any hard feelings between you or bring up any bad things that had happened. I just, I went through an emotional deal myself, you know and I just—it just, it just hit, you know? Have you ever been to that point to where you just blow? Well I blew at the wrong time. And I you know I took out a lot of my faults out on y'all. I just was in shock that it happened. I still feel Deardra's my friend. I don't feel like she did anything intentionally to hurt me, and, you know, I just need to, you know, I needed a job.

**Thacker:** Uh-huh.

**Boyd:** So, I'm trying to find out what I can do to make things right.

*Id.*

At no time during their conversation did Boyd accuse Thacker of terminating her employment because she had refused to adhere to the alleged directive not to hire more African–Americans, nor did she even mention anything related to such alleged directives. To the contrary, Boyd admitted, once again, that she believed Woods had caused her termination by reporting her misconduct to Thacker. She also expressed her belief that Thacker had terminated her employment because she was wearing a heart monitor. This conversation demonstrates Boyd's belief that the alleged refusal to ignore the alleged admonition that she was hiring too many African–Americans was not the "but for" cause of her termination. Rather, she admitted to Thacker that it was her own behavior and actions that led to her termination.

The Court finds that the Plaintiff has not established a causal connection between Boyd's protected activity and her 1999 termination by substantial evidence. Accordingly, the Court finds that the Plaintiff has failed to meet its burden of establishing a *prima facie* case of retaliatory termination. As such, the Defendant's motion for summary judgment should be granted with regard to that claim.[1]

### CONCLUSION

After a thorough review of the pleadings, the briefs of the parties, and the excerpts from the Plaintiff's deposition submitted as summary judgment evidence, the Court holds that summary judgment should be granted and this case should be dismissed with prejudice. The Plaintiff's retaliation claim is both factually or legally deficient. Even when viewing all of the evidence in the light most favorable to the Plaintiff, the Court finds that there is no genuine issue as to any material fact and the Defendant, TCIM, is entitled to judgment as a matter of law as to all of the Plaintiff's remaining claims.

It is therefore

**ORDERED** that *Defendant, TCIM Services, Inc.'s, Motion for Summary Judgement* (Docket No. 21) is hereby **GRANTED** in all respects.

It is further

**ORDERED** that this action be **DISMISSED WITH PREJUDICE** as to all the Plaintiff's claims.

It is further

**ORDERED** that all other motions currently pending in this case are hereby **DENIED AS MOOT.**

It is further

**ORDERED** that all relief not expressly granted is **DENIED.**

It is further

**ORDERED** that each party shall bear its own costs and fees.

It is further

**ORDERED** that this case is **CLOSED.**

---

1. Even if the Plaintiff could establish a prima facie case of retaliation, she has not provided substantial evidence to the Court that: (1) TCIM's articulated reason for terminating her is false; and, (2) prohibited retaliation was the actual reason for termination. *Martin,* 65 F.Supp.2d at 559.