United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 5, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 02-50560

_____

STEVEN BAYLESS,

Plaintiff-Appellant,

versus

ORKIN EXTERMINATING COMPANY, INC., doing business as Orkin Pest Control,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Western District of Texas
(No. W-01-CV-340)

_____

Before SMITH, DENNIS, and CLEMENT, Circuit Judges:

PER CURIAM:[*]

A job applicant sued a prospective employer under the Americans with Disabilities Act claiming the job applicant's allegedly uncontrolled diabetes was "regarded as" a disability by the prospective employer, and thus that the prospective employer discriminated against the job applicant by refusing to hire him. *See* 42 U.S.C. § 12102(2)(C). The job applicant appeals summary judgment in favor of the prospective employer. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

# I. FACTS AND PROCEEDINGS

Steven Bayless ("Bayless") applied for a sales position with Orkin Exterminating Company, Inc. ("Orkin") in its Waco office on September 18, 1996. The sales position required driving, climbing ladders, entering attics, and going under houses. Bayless was conditionally hired by the Waco office manager, Mike Kelly ("Kelly"), but was also told that he needed to pass a medical exam, undergo drug screening, and have a clean driving record. Orkin referred Bayless to a local physician of its own selection for the medical tests. Bayless, who had had Type II Diabetes for 10 years and who took medication daily to control it, passed the medical tests. The local physician indicated that Bayless would be "able to perform essential job functions." Bayless had a clean driving record.

As part of the hiring process, however, Orkin had another healthcare consultant, Dr. Nudelman, in Atlanta, Georgia, review the local physician's medical report on Bayless. Dr. Nudelman indicated that before Bayless could be approved for hire, Bayless' personal physician should be asked to supply in writing further information, including: (1) whether Bayless' diabetes was "under control and/or treatment," and (2) the results from fasting blood glucose and hemoglobin A1C tests.[1] Bayless requested his attending physician, Dr. Norris, to respond to Dr. Nudelman's inquiries. Dr. Norris' physician's assistant ("PA"), Ann Landers, reported to Dr. Nudelman that Plaintiff's diabetes was being treated but was "not well controlled at this time," and noted a blood sugar level of 312. After receiving the PA's report, Dr. Nudelman recommended against hiring Bayless at that time. Orkin did not hire Bayless.

---

[1] A blood glucose test measures the amount of glucose in blood at the given period of time. Hemoglobin A1C is a red blood cell. A hemoglobin A1C test measures the amount of glucose attached to red blood cells and provides an estimate of sugar levels over the past two or three months.

Approximately two weeks later, Bayless sought a second opinion from Dr. Zia, another of his attending physicians. Dr. Zia determined that Bayless' diabetes was "under control". Orkin did not hire Bayless following Dr. Zia's results. Instead, on November 18, 1996, a representative at Orkin's home office in Georgia, Molly Phillips ("Phillips"), indicated to Bayless that Dr. Nudelman wanted to insure that Bayless' diabetes was better controlled for six months. On the same day, Kelly told Bayless he would hold the job open for 6 months. In December 1996, Bayless began working at the Marlin HEB grocery store as a floor manager. Bayless stated in deposition testimony that he sent his resume to HEB only because he began to believe that Orkin was no longer considering him for employment.

Despite his employment with HEB, Bayless contacted Kelly in the Waco office to inquire about the position on March 8, 1997 (roughly six months after his initial application with Orkin). Kelly indicated that the job was still available and that Bayless would need to check with Phillips to determine what was needed to show the diabetes was under control. On that same day, Bayless contacted Phillips, who indicated that Bayless needed a statement from an attending physician that his diabetes was under control. Bayless did not re-apply to Orkin. Bayless continued to work for HEB, where he obtained a supervisory position at some point.

Bayless mailed a handwritten note dated March 10, 1997, to the EEOC. The EEOC received the note but did not forward a copy of Bayless' letter to Orkin within 10 days of its receipt. Next, Bayless completed an intake questionnaire, which the EEOC received on August 25, 1997. Finally, Bayless filed a formal charge of discrimination with the EEOC on April 8, 1998, more than one year after the final instance of alleged discrimination of March 8, 1997. The EEOC duly forwarded Bayless' charge to Orkin. While filing with the EEOC can effect a parallel filing with the Texas

Commission on Human Rights ("TCHR"), the parties dispute whether such a dual filing was effected. The EEOC determined there was reasonable cause to believe Orkin had discriminated against Bayless under the ADA and issued a right to sue letter to Bayless.

Bayless sued in federal court. Orkin moved for summary judgment on two grounds: (1) Bayless was not disabled for purposes of the ADA because Bayless was not "regarded as" having an impairment that substantially limited one or more major life activities, and (2) Bayless' charge of discrimination, filed with the EEOC on April 8, 1998, was more than 180 days  (or 300 days, if applicable) after the date of the alleged discrimination, and thus was untimely. The district court assumed, without deciding, that Bayless' EEOC charge was timely. The district court granted summary judgment in favor of Orkin, concluding that (1) there was no evidence Orkin "perceived" Bayless' uncontrolled diabetes would prevent him from working a broad class of jobs, and (2) the uncontrolled diabetes did not substantially limit Bayless because it was a temporary impairment. Bayless appeals.

## II.  STANDARD OF REVIEW

This Court reviews a motion for summary judgment *de novo*. *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 712-13 (5th Cir. 2002). The purpose of summary judgment is to pierce the pleadings and assess the proof to determine if a genuine need for trial exists. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.  DISCUSSION

4

As an initial matter, Orkin attempts to pretermit Bayless' lawsuit by challenging the timeliness of his filing of a charge with the EEOC. The district court assumed, without deciding, that the filing was timely. We will do likewise.

The Americans with Disabilities Act of 1990 ("ADA"), 104 Stat. 328, 42 U.S.C.A. §§ 12101-213 (1995), prohibits covered entities, including prospective employers, from discriminating against individuals on the basis of their disabilities. 42 U.S.C. § 12112(a). The ADA defines disability as:

(A)     a physical or mental impairment that substantially limits one or more
        of the major life activities of such individual;

(B)     a record of such an impairment; or

(C)     being regarded as having such an impairment.

42 U.S.C. § 12102(2); *see also Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193 (2002). To present a *prima facie* case of discrimination under the ADA, a plaintiff must show he is a "qualified individual with a disability and that the negative employment action occurred because of the disability." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998).

Bayless contends he satisfies the definition of disability because he was "regarded as" having a disability by Orkin. To qualify under the "regarded as" definition of disability, a plaintiff must show either that: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 491 (1999). This Court has recognized a third way to qualify under the "regarded as" definition of disability: an impairment can be substantially limiting because of the attitudes of others toward such an impairment. *See McInnis v. Alamo Cmty. Coll. Dist.*, 207

5

F.3d 276, 281 (5th Cir. 2000) ; *Sherrod*, 132 F.3d at 1221; *see also* 29 CFR § 1630.2(l)(1)-(3) (2002).  Bayless does not commit to any one of these showings of "regarded as", but suggests he satisfies at least one, and perhaps all, of them.

Under any of the three showings, a plaintiff must also prove that the perceived impairment, if it existed as perceived by a covered entity, "substantially limits" one or more "major life activities". *See Sutton*, 527 U.S. at 490-92 (both); *McInnis*, 207 F.3d at 281.  We assume *arguendo* that Orkin regarded Bayless' diabetes as a limitation on his ability to perform jobs that require driving, climbing, and heavy lifting and consider whether this impairment, if it existed as Orkin perceived it, would be an actual disability.

A.

On appeal, Bayless contends Orkin regarded him as limited in the major life activity of working. Working is a major life activity according to the EEOC.  29 CFR § 1630.2(i) (2002) (listing major life activities, including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working").  The Supreme Court has neither endorsed nor rebuffed the EEOC's definition.  *See Sutton*, 527 U.S. at 479.  Instead, the Court has assumed without deciding that working is a major life activity.  *Murphy v. United Parcel Service*, 527 U.S. 516, 523 (1999) ("As in *Sutton* . . ., we assume, *arguendo*, that the [EEOC] regulations regarding the disability determination are valid."); *see also Toyota*, 534 U.S. at 200 ("Because of the conceptual difficulties inherent in the argument that working could be a major life activity, we have been hesitant to hold as much, and we need not decide this difficult question today.").

Like the Supreme Court in *Sutton*, *Murphy*, and *Toyota*, we will assume without deciding that working is a major life activity.  *See*, *e.g.*, *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 317 (5th

Cir. 2001) (citing the EEOC's list of major life activities and assuming working is a major life activity).

B.

Although the ADA does not define "substantially limits," it appears to have at least two dimensions: severity and duration.

Supreme Court precedent states that "substantially" suggests "considerable" or "specified to a large degree." *Sutton*, 527 U.S. at 491. When the major life activity at issue is working, the Supreme Court requires "at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Id.* at 491.

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Id.* at 492. At most, Bayless asserts that Orkin believed Bayless ineligible for all jobs requiring driving, climbing, and heavy lifting. No cases discuss whether such jobs qualify as a broad class of jobs. In this case, Bayless secured a position with HEB within several weeks of his non-employment with Orkin, which suggests a "host of different types of jobs" were available to Bayless and thus that he was not precluded from a broad class of jobs. *Id.*

In regard to duration, the Supreme Court has noted that "substantial limitation" requires that an "impairment's impact must also be permanent or long-term," *Toyota*, 534 U.S. at 198, and that corrective measures must be taken into account when evaluating an individual's impairment. *Sutton*, 527 U.S. at 482, 488-89; *see also Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 468 (4th Cir.

7

2001).[2] Thus, the longevity of Bayless' diabetes in an uncontrolled state, and not his ten years with diabetes, is the appropriate inquiry. Evidence offered by Bayless' attending physician, Dr. Zia, suggests that the impairment of uncontrolled diabetes was gone within a couple of weeks from its first detection. For its part, Orkin believed the impairment could be alleviated in six months. Bayless provides no authority suggesting that either 2 weeks or 6 months is considered "long term."

Bayless' uncontrolled diabetes fails to be a "substantial limitation." Even if the Court assumes that "all jobs requiring driving, climbing, and heavy lifting" is a broad enough class under *Sutton*, 527 U.S. at 492, Bayless' uncontrolled diabetes was a temporary condition which, by Bayless' own assertion, lasted only two weeks. Ephemeral impairments are not substantial limitations.

## C.

Because the Court assumed working was a major life activity and because the Court concludes Bayless' uncontrolled diabetes does not "substantially limit" the designated major life activity, Bayless has created no genuine issue of material fact regarding whether Orkin regarded Bayless as actually disabled.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Orkin.

---

[2] The EEOC (which may or may not speak with authority) instructs that three factors should be considered: the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. *See* 29 CFR § 1630.2(j)(2)(i)-(iii) (2002).